907 P.2d 210

**GUARANTY NATIONAL INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Lena C de BACA, Defendant–Appellant,**

v.

**ESTATE OF Mario SERNA, Real Party in Interest, Defendant–Appellant.**

**No. 16301.**

Court of Appeals of New Mexico.

Oct. 17, 1995.

Certiorari Denied Nov. 21, 1995.

Gregory V. Pelton, Pelton & O'Brien, P.A., Albuquerque, for Plaintiff–Appellee.

David J. Berardinelli, Berardinelli & Associates, Santa Fe, for Defendants–Appellants.

## OPINION

ALARID, Judge.

Lena C de Baca (C de Baca) appeals an order of the District Court granting a declar-

atory judgment in favor of Guaranty National Insurance Company (Guaranty). The order stated that Guaranty owed no duty to defend or indemnify C de Baca for an automobile accident that occurred on March 7, 1989, with Mario Serna, and that C de Baca was uninsured at the time of that accident. C de Baca raises seven points that we treat as three issues on appeal: (1) whether the trial court's findings of fact and conclusions of law that Guaranty had no duty to defend are supported by substantial evidence; (2) whether the trial court's findings of fact and conclusions of law that C de Baca had no insurance coverage at the time of her accident are supported by substantial evidence; and (3) whether Guaranty was bound by NMSA 1978, Section 59A–18–29(A) (Repl. Pamp.1995), to give C de Baca a ten-day notice of cancellation. For the reasons that follow, we affirm. C de Baca's motion to take judicial notice is denied.

## FACTS

In December 1988, C de Baca bought a 1982 Plymouth Reliant. On February 2, 1989, C de Baca called the Department of Motor Vehicles and asked what she needed to do to register her car. She was told that she needed to have "proof of insurance." When C de Baca contacted the Albert Gallegos Agency (Agency) in order to obtain car insurance, she got a quote of $31.00, to insure her vehicle. On February 2, 1989, she purchased and mailed a postal money order in the amount of $31.00 payable to Guaranty National. The money order was received by the Agency on February 3, 1989. On February 4, 1989, C de Baca received the application signed by a representative of the Agency. She signed the application on February 5, 1989, and mailed it back to the Agency on February 6, 1989. This application clearly stated that the effective dates of coverage would be from February 3, 1989 to March 3, 1989. C de Baca acknowledged at trial that she knew if she failed to pay her insurance premium on time she would not have any insurance coverage.

On February 9, 1989, C de Baca received a "Dear Customer" letter from the Agency. This letter advised her to review a list of items concerning her auto insurance policy. C de Baca also registered her car on this date. On or about February 12, 1989, C de Baca received her first renewal notice that her premium was due for the next month. The renewal notice said there was no grace period and payment was due on March 3, 1989. Before the accident, C de Baca had notice that her insurance would expire at 12:01 a.m. March 3, 1989, unless the second month's premium was paid prior to March 3, 1989.

At her deposition, C de Baca testified unequivocally that she purchased and mailed the second postal money order on March 4, 1989. However, the envelope in which she mailed the payment to Guaranty was postmarked March 8, 1989, and the money order she sent to Guaranty was dated March 8, 1989. On March 7, 1989, C de Baca was involved in the accident with Mario Serna, and Mr. Serna died as a result of the accident.

His estate filed a wrongful death action against C de Baca and Guaranty on April 11, 1990, seeking damages and declaratory relief regarding Guaranty's duty to provide C de Baca with liability coverage. On May 10, 1990, Guaranty filed its Answer denying coverage but admitting that a "genuine controversy" existed on the issue of coverage. In August of 1990, Guaranty successfully moved to be dismissed from the wrongful death action. In February of 1991, Mr. Serna's estate offered to settle its wrongful death claim against C de Baca for $250,000.00 in exchange for providing C de Baca with a release from all future liability under the judgment, provided that C de Baca assign all rights she might have under the policy at issue in this case. On March 11, 1991, Guaranty filed its declaratory judgment complaint in this case. Subsequently, judgment was entered against C de Baca in the wrongful death action pursuant to the settlement agreement noted above.

## Effective Date of Insurance Coverage

C de Baca advances four points concerning why she had insurance coverage at the time of the accident: (1) that the trial court erred in finding that her insurance coverage began

on February 3, 1989; (2) that Guaranty's application form was ambiguous as a matter of law and should have been construed in favor of coverage; (3) that she had no reasonable expectation of actual coverage until February 9, 1989, as a matter of law; and (4) that the trial court erred in refusing to accept the unambiguous stipulation of the parties during trial that C de Baca received her proof of insurance on February 9, 1989. Although C de Baca attempts to cast most of her arguments as questions of law, we agree with Guaranty that the essence of C de Baca's contentions is that the trial court's findings of fact and conclusions of law, ruling that the effective date of insurance coverage was February 3, 1989, are not supported by substantial evidence. Accordingly, we review whether the trial court's findings that C de Baca's insurance coverage began on February 3, 1989, and ended on March 3, 1989, are supported by substantial evidence.

■ "Unless clearly erroneous or deficient, findings of the trial court will be construed so as to uphold a judgment rather than to reverse it." *Herrera v. Roman Catholic Church,* 112 N.M. 717, 721, 819 P.2d 264, 268 (Ct.App.1991). "[S]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Sunwest Bank v. Colucci,* 117 N.M. 373, 375, 872 P.2d 346, 348 (1994). In considering a substantial evidence claim, the appellate court "resolve[s] all disputed facts in favor of the successful party, indulge[s] all reasonable inferences in support of a verdict, and disregard[s] all evidence and inferences to the contrary." *Clovis Nat'l Bank v. Harmon,* 102 N.M. 166, 168–69, 692 P.2d 1315, 1317–18 (1984).

Our Supreme Court has recognized that coverage would normally be expected to commence upon receipt of a premium by an agent. *See Ellingwood v. N.N. Investors Life Ins. Co.,* 111 N.M. 301, 306, 805 P.2d 70, 75 (1991). In *Ellingwood* it was stated that:

Where an insurance company has authorized the agent to accept payment, the agent may well appear to have the authority to effect immediate coverage. We believe a typical customer would have a reasonable belief that in return for a payment of cash, and an authorization for subsequent automatic payments, he has purchased some immediate benefit in return, especially where the consumer questions the agent and is assured that this is the case.

*Id.* The trial court found that Guaranty was at risk as of February 3, 1989, and on that same day, C de Baca could have expected her insurance coverage to commence. The trial court also found that, at the time of the accident, C de Baca did not have insurance coverage. The trial court further found that C de Baca knew at the time of the accident she had no liability insurance and that she attempted to reinstate coverage by purchasing the money order after the accident.

■ We believe that the trial court's findings of fact and conclusions of law concerning February 3, 1989, as the effective date of insurance coverage, are supported by substantial evidence for several reasons. First, C de Baca received many documents clearly showing that coverage began on February 3, 1989, including a renewal notice, a car policy, a "Dear Customer" letter, and a signed insurance application. All of these documents are substantial evidence in support of the trial court's finding that coverage began on February 3.

Second, to the extent C de Baca argues the Agency lacked authority to bind coverage on February 3, 1989, Guaranty persuasively argues that it ratified the agent's binder, thus making the effective date of coverage February 3, 1989. *See Jessen v. National Excess Ins. Co.,* 108 N.M. 625, 630, 776 P.2d 1244, 1249 (1989) ("Ratification may be implied by acquiescence in the results of an unauthorized act or by retention of the benefits of [that] act.") (citations omitted); *Grandi v. LeSage,* 74 N.M. 799, 809–10, 399 P.2d 285, 293 (1965) (upon acquiring knowledge of agent's unauthorized act, the principal should promptly repudiate it, otherwise he will be presumed to have ratified and affirmed it); *Ulibarri Landscaping Material, Inc. v. Colony Materials, Inc.,* 97 N.M. 266, 270, 639 P.2d 75, 79 (Ct.App.1981) ("Ratification is the adoption or confirmation by a principal of an unauthorized act performed on its behalf by an agent."), *cert. denied,* 98 N.M. 50, 644

P.2d 1039 (1982). Indeed, the trial court's findings indicate that even if the Agency was not authorized to begin coverage on February 3, Guaranty nevertheless waived any right it had to contest the Agency's authority to provide C de Baca with coverage on February 3. We believe those findings can be construed to mean that Guaranty ratified the Agency's decision to commence coverage on February 3. *See Herrera,* 112 N.M. at 721, 819 P.2d at 268 ("findings of the trial court will be construed so as to uphold a judgment rather than to reverse it" and findings "may properly be given a liberal interpretation if the interpretation is supported by the evidence").

Third, it does not appear that C de Baca ever objected to the coverage date commencing on February 3, 1989, or asked for a different date of coverage. Moreover, the "Dear Customer" letter specifically advised C de Baca to review if "the beginning date and time" of the policy application was correct. C de Baca's claims might have been more persuasive if it truly appeared that she was confused or somehow misled into believing that her coverage would begin later than February 3 or end later than March 3. But the fact that C de Baca never objected to coverage beginning on February 3, despite clear indications that it would, further supports the trial court's finding that coverage commenced on February 3.

Moreover, the evidence strongly supports the trial court's determination that coverage ended on March 3. Indeed, the evidence showed that C de Baca knew at the time of the accident that she was not insured. As stated above, the money order she sent to Guaranty was dated March 8, 1989. Nevertheless, C de Baca erroneously testified in her deposition that she purchased and mailed a money order on March 4, 1989. The foregoing strongly suggests that C de Baca knew her coverage ended on March 3 and now claims otherwise, despite the fact that she had received notice that the term of coverage would expire on March 3, 1989, and had not objected. Although language in the application may have injected ambiguity into the contract between C de Baca and Guaranty, the other evidence at trial resolved that am-

biguity. *See Ellingwood.* Accordingly, based on the foregoing evidence, we affirm the trial court's findings and conclusions to the effect that C de Baca was insured by Guaranty from February 3 to March 3, and uninsured at the time of the accident on March 7. *See Herrera,* 112 N.M. at 721, 819 P.2d at 268.

### Duty to Defend

Aside from whether insurance coverage actually existed at the time of the accident, C de Baca maintains that Guaranty failed to prove it had no duty to defend her in the wrongful death action brought by the estate of Mario Serna. Thus, C de Baca argues the trial court erred in ruling that Guaranty had no duty to defend. The trial court found that because C de Baca's insurance coverage had lapsed prior to the date of the accident and was not reinstated until two days after the accident, Guaranty had no duty to defend C de Baca.

■ Our Supreme Court has recognized that when an insured is sued, the insurer has no duty to defend if the allegations in the complaint clearly fall outside the policy's provisions. *See Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo,* 114 N.M. 695, 697, 845 P.2d 789, 791 (1992). C de Baca argues that because the wrongful death complaint alleged that the accident occurred "on or about March 8, 1989," that was a sufficient allegation that the accident happened while C de Baca's insurance coverage was in effect. Of course, when the question of coverage turns on whether the events alleged in the complaint occurred during the policy period, it is necessary to look outside the four corners of the complaint. The complaint will provide no information on the effective dates of the policy. We have already held that there was substantial evidence to support the trial court's finding that C de Baca was insured from February 3 to March 3 and the insurance coverage had not been reinstated by March 7. As for the date of the events alleged in the complaint, a court need not rely on the complaint when the actual date is undisputed. *See Mount Vernon Fire Ins. Co. v. Scottsdale Ins. Co.,* 99 Md.App. 545, 638 A.2d 1196, 1204 (1994)

("[T]he court is not required to play the ostrich.") This proposition is particularly compelling when the only specific date in the complaint is outside the coverage period and the possibility of coverage arises solely from the use of the phrase "on or about." Here, it is undisputed that the accident occurred after March 3. Thus, we believe the trial court was correct in concluding that the liability alleged in the complaint clearly fell outside of the policy coverage and that Guaranty, therefore, had no duty to defend C de Baca in the wrongful death action. *Bernalillo,* 114 N.M. at 697, 845 P.2d at 791.

■ C de Baca points out that when Guaranty initially answered the wrongful death complaint it admitted that a genuine controversy existed regarding whether C de Baca had insurance coverage at the time of the accident. Relying on Illinois case law, C de Baca suggests that Guaranty was either obligated to defend her under a reservation of rights or immediately pursue a declaratory judgment action to determine whether C de Baca had insurance coverage. *See, e.g., LaRotunda v. Royal Globe Ins. Co.,* 87 Ill. App.3d 446, 42 Ill.Dec. 219, 224–226, 408 N.E.2d 928, 933–35 (1980). Because Guaranty did not commence a declaratory judgment action until approximately one year after the wrongful death action was filed, C de Baca contends that Guaranty should be estopped from denying coverage. *Id.* We note that Illinois law on estoppel in these circumstances has not been universally adopted, *see Sentinel Ins. v. First Ins. of Hawaii,* 76 Hawaii 277, 875 P.2d 894, 911 (1994) (indicating that Illinois rule may be a minority view), but even under Illinois law, the estoppel argument C de Baca advances does not apply when no policy of insurance exists. *LaRotunda,* 42 Ill.Dec. at 225, 408 N.E.2d at 934; *Country Mut. Ins. Co. v. Millers Nat'l Ins. Co.,* 178 Ill.App.3d 1012, 128 Ill.Dec. 131, 136, 534 N.E.2d 151, 156 (1989). Thus, because C de Baca did not have insurance coverage in effect at the time of the accident, Guaranty is not estopped from denying coverage.

### Ten–Day Notice of Cancellation

■ C de Baca next argues that Section 59A–18–29(A) required Guaranty to give her a ten-day notice of cancellation of her insurance coverage for nonpayment of the renewal premium. She further contends that her insurance should have continued for at least ten days past the termination date until at least March 13, 1989, because of the lack of notice. We disagree.

Section 59A–18–29(A) provides that:

> An insurer or agent may at any time cancel a policy for nonpayment of premium thereon when due, whether the premium is payable directly to the insurer or agent or indirectly under any premium financing plan or extension of credit. The insurer or agent shall give the named insured written notice of such cancellation not less than ten (10) days prior to the effective date of the cancellation.

The trial court found that there was a lapse in coverage, rather than a cancellation of coverage between March 3 and March 9, 1989. Thus, the trial court concluded that the provisions of Section 59A–18–29(A) did not apply in this case. We believe the trial court properly found that there was a "lapse" and not a "cancellation."

"The term 'cancellation' refers to a unilateral act of the insurer terminating coverage during the policy term." *See Safeco Ins. Co. v. Irish,* 37 Wash.App. 554, 681 P.2d 1294, 1296 (1984). In contrast, the failure of an insured to pay a renewal premium by the due date results in a lapse of coverage as of the last day of the policy period. *See Suchoski v. Redshaw,* — Vt. —, 660 A.2d 290, 293 (1995). Under those circumstances, other courts have held that similar statutory requirements for ten-day notifications of cancellation do not apply. *See, e.g., Shelly v. Strait,* 634 P.2d 1017, 1018 (Colo.Ct.App. 1981) (statutory requirement for ten days advance notice of cancellation applied to the unilateral cancellation by insurer, not to policy expiration); *Royal Ins. Co. v. Western Casualty Ins. Co.,* 444 N.W.2d 846 (Minn.Ct. App.1989). C de Baca has not pointed this Court to any other authority to the contrary. Accordingly, we affirm the trial court's finding that there was a lapse in coverage and hold that the trial court did not err in con-

cluding that Section 59A–18–29(A) did not apply to the facts of this case.

## CONCLUSION

In summary, we affirm. The trial court did not err in ruling that Guaranty had no duty to defend, that C de Baca had no insurance coverage at the time of her accident, and that Guaranty was not bound by the ten-day notice of cancellation requirements of Section 59A–18–29(A).

**IT IS SO ORDERED.**

APODACA, C.J., and HARTZ, J., concur.