12 P.3d 960

2000-NMSC-033

**Nichelle PONDER, Plaintiff–Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendants–Appellants.**

No. 26,254.

Supreme Court of New Mexico.

Oct. 23, 2000.

Charles W. Durrett, P.C., Charles W. Durrett, Lisa K. Durrett, Alamogordo, NM, for Appellants.

Gary C. Mitchell, P.C., Gary C. Mitchell, Ruidoso, NM, Kevin O.C. Green, Mankato, MN, for Appellee.

## OPINION

BACA, Justice.

{1} On July 4, 1987, while driving her parents' Ford F100 pickup truck, Plaintiff–Appellee, Nichelle Ponder, was injured in an automobile accident with an unidentified and uninsured motorist leaving her quadriplegic and suffering from severe brain injuries. Defendant–Appellant, State Farm Mutual Automobile Insurance Company, paid Nichelle $50,000 in uninsured motorist benefits for the pickup truck, but denied her request to stack the uninsured motorist benefits on her parents' additional seven automobile insurance policies with State Farm. Nichelle subsequently initiated an action against State Farm to collect stacked uninsured motorist benefits. State Farm appeals a bench trial judgment awarding Nichelle $381,729.43, consisting of $225,000 in uninsured motorist benefits stacked from the additional seven vehicles insured by her parents and $156,729.43 in prejudgement interest. We accepted certification from the Court of Appeals to address an issue for which there is substantial public interest in New Mexico. *See* NMSA 1978, § 34–5–14(C) (1972) ("The supreme court has appellate jurisdiction ... if the court of appeals certifies to the supreme court that the matter involves ... an issue of substantial public interest."). Specifically, we consider whether the trial court properly determined that Nichelle was a Class I insured entitled to stack uninsured motorist coverage on her parents' eight vehicles, when before her accident, she married, moved away from the family home, and used a vehicle for which she had been rated by State Farm and for which an additional premium had been assessed. We believe that the trial court properly resolved these issues and therefore affirm the trial court's judgment.

## I.

{2} Prior to the July 4, 1987 accident, Nichelle lived with her parents, Linda and Hart Ponder, and was listed as the principal driver of the Ford F100 pickup truck, which was insured by State Farm along with seven additional vehicles. Separate premiums were paid for each vehicle. After she was involved in a minor accident in 1985, shortly after receiving her driver's license, State Farm rated Nichelle and an additional premium was assessed for her use of the pickup truck. At that time, Linda Ponder understood Nichelle to be fully covered and under the terms of the policy, she in fact was fully covered for all the Ponder's vehicles as a Class I insured.

{3} In February 1986, Nichelle married Mike Taylor and both lived with Nichelle's parents until May 1987. Linda Ponder testified that she originally reported Nichelle's marriage, the birth of Nichelle's child, and their change of residence from the Ponder family home to the Diamond A Ranch to Marla Atkinson of Atkinson Agency, a State Farm agency the Ponders had relied upon exclusively for their insurance needs since 1982. Linda Ponder testified that on several occasions she inquired about the adequacy of her daughter's coverage and explained to Atkinson's agents that she wanted "full coverage" for her daughter. She expressed concern to the Atkinson Agency that because Nichelle would be moving out, she wanted to ensure that her daughter's full coverage continued. On these occasions, Linda Ponder was advised by the agency that her daughter was "fully covered," not to concern herself because they would look into it, and not to worry because Nichelle, "as far as they were concerned, was still fully covered." At no time did the Atkinson Agency communicate to Linda Ponder that the change in her daughter's residence would affect the extent of her uninsured/underinsured motorist coverage.

{4} The policies for all eight of the Ponders' vehicles were renewed on May 7, 1987, each for a six-month duration. Prior to issuing the renewal notices, State Farm had been provided with information that Ponder was married, had a child, and was no longer living

with her parents. In the renewal notices, Nichelle was still rated on the policy for the F100 pickup truck and an additional premium continued to be assessed and paid. The renewal notices for three of the vehicles contained the language, "Younger drivers included if rated on another vehicle insured by us."

{5} After the accident, Nichelle sought payment under the policy for $275,000 in uninsured motorist benefits, which reflected a stacking of uninsured motorist coverage under each of the Ponder's eight vehicles. State farm paid $50,000, claiming that she was only covered by uninsured motorist benefits for the Ford F100 pickup truck. Nichelle then filed suit to collect the uninsured motorist benefits on the remaining seven vehicles. Despite finding that Nichelle was not a Class I insured under the express provisions of the policy, the trial court concluded that because Nichelle was listed as the principal driver, and additional premiums were assessed, she was entitled to stack her parents' uninsured motorist coverage on the remaining seven vehicles as a Class I insured. The trial court also awarded Nichelle prejudgment interest. State Farm now appeals the trial court's judgment.

## II.

{6} Nichelle and State Farm disagree about the appropriate standard of review. Nichelle suggests this Court need only determine whether substantial evidence exists in the record to support the decision of the trial court. *See Melton v. Lyon,* 108 N.M. 420, 422, 773 P.2d 732, 734 (1989) (using the substantial evidence standard, "the reviewing court must view the evidence in the light most favorable to support the finding, and all reasonable inferences in support of the court's decision will be indulged"). State Farm urges that we apply a de novo review of the trial court's legal conclusions with no formal deference paid to the trial court decision because this question is an important matter of public policy which involves creating a new category of Class I insureds in contravention of existing state law. *See Gabaldon v. Erisa Mortgage Co.,* 1997–NMCA–120, ¶ 7, 124 N.M. 296, 949 P.2d 1193, (stating, "[T]he legal consequences flowing from

the historical facts will be subject to de novo review if the question involves matters of public policy with broad precedential value beyond the confines of the particular case."), *aff'd in part and rev'd in part on other grounds by Gabaldon v. Erisa Mortgage Co.,* 1999–NMSC–039, ¶ 7, 128 N.M. 84, 990 P.2d 197 (stating, "the legal consequences flowing from the historical facts will be subject to de novo review if the question involves matters of public policy with broad precedential value beyond the confines of the particular case").

{7} We conclude that our determination of whether the trial court erred in holding that Nichelle was a Class I insured, entitled to stack benefits under her parents' multi-vehicle automobile insurance policies, presents a mixed question of law and fact. As such, "we use the substantial evidence standard for review of the facts and then make a de novo review of the trial court's application of the law to those facts." *State v. Reynolds,* 119 N.M. 383, 384, 890 P.2d 1315, 1316 (1995). We review the whole record to determine whether substantial evidence exists to support the trial court's factual determinations. *See Bennett v. City Council for Las Cruces,* 1999–NMCA–015, ¶ 20, 126 N.M. 619, 973 P.2d 871; *see also Enriquez v. Cochran,* 1998–NMCA–157, ¶ 20, 126 N.M. 196, 967 P.2d 1136 ("Because the trial court's decision must be based on its conclusions about a party's conduct and intent, implicit in the standard of review is the question of whether the court's findings and decision are supported by substantial evidence."). "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez,* 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990) (citations omitted). We review de novo the trial court's application of the law to the facts in arriving at its legal conclusions. *See Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.,* 113 N.M. 9, 12, 820 P.2d 1323, 1326 (1991).

## III.

{8} State Farm advances three arguments in its challenge of the trial court's determination that Nichelle was a Class I insured entitled to stack the uninsured mo-

torist benefits for the additional seven vehicles covered by her parents' policies. State Farm claims that under New Mexico law: (1) simply rating a driver for which payment of an additional premium is required does not confer Class I status; (2) the trial court's finding of fact that Nichelle was not a named insured under the express provisions of the policy should have the effect of denying her Class I status; and (3) if this Court finds that Nichelle was in fact a Class I insured, language in the renewal notices for three vehicles purporting to include younger rated drivers as insureds, should be read together with exclusions in the remaining vehicle notices so as to limit stacking to only those additional vehicles. State Farm urges this Court to reject the trial court's extension of the law of stacking and uninsured motorist coverage as a "derogation of the express language of the contract ... [and] public policy guidelines and considerations heretofore established by our appellate courts."

{9} Nichelle advances a number of arguments in defense of the judgment and the trial court's conclusion that she was a Class I insured. First, Nichelle claims that because she was rated as the principal driver for the F100 pickup truck and assessed additional premiums, and because the policy failed to define certain terms, her status was elevated above that of a mere permissive Class II insured. Second, Nichelle contends that the representations made by the Atkinson Agency to Linda Ponder regarding the extent of her coverage led Linda Ponder to believe that there was no change in coverage after Nichelle moved to the Diamond A Ranch from the Ponder family home. Finally, Nichelle argues that the language in the renewal notices containing the phrase, "Younger drivers included if insured on other vehicles by us" would cause a reasonable insured to believe that she was a Class I insured. We hold that these arguments, taken together, support the trial court's judgment.

## A.

{10} Stacking refers to "an insured's attempt to recover damages in aggregate under more than one policy or one policy covering more than one vehicle until

all damages either are satisfied or the total policy limits are exhausted." *Morro v. Farmers Ins. Co.*, 106 N.M. 669, 670, 748 P.2d 512, 513 (1988) (citing *Gamboa v. Allstate Ins. Co.*, 104 N.M. 756, 757, 726 P.2d 1386, 1387 (1986), and *Lopez v. Foundation Reserve Ins. Co.*, 98 N.M. 166, 168, 646 P.2d 1230, 1232 (1982)).

{11} We resolve questions regarding insurance policies by interpreting their terms and provisions in accordance with the "same principles which govern the interpretation of all contracts." *Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 18, 123 N.M. 752, 945 P.2d 970 (quoting 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 21:1 (1996), and citing *Jaramillo v. Providence Washington Ins. Co.*, 117 N.M. 337, 340, 871 P.2d 1343, 1346 (applying principles of contract interpretation to construe an automobile insurance policy)). Our analysis of the insurance policy proceeds with the primary goal of "ascertain[ing] the intentions of the contracting parties with respect to the challenged terms at the time they executed the contract." *Strata Prod. Co. v. Mercury Exploration Co.*, 1996–NMSC–016, ¶ 29, 121 N.M. 622, 916 P.2d 822. "When discerning the purpose, meaning, and intent of the parties to a contract, the court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *CC Housing Corp. v. Ryder Truck Rental, Inc.*, 106 N.M. 577, 579, 746 P.2d 1109, 1111 (1987); *see also Montoya v. Villa Linda Mall, Ltd.*, 110 N.M. 128, 129, 793 P.2d 258, 259 (1990) ("It is black letter law that, absent an ambiguity, a court is bound to interpret and enforce a contract's clear language and cannot create a new agreement for the parties."). Thus, when the policy language is clear and unambiguous, we must give effect to the contract and enforce it as written. *See Estate of Griego v. Reliance Std. Life Ins. Co.*, 2000–NMCA–022, ¶ 19, 128 N.M. 676, 997 P.2d 150; *Richardson v. Farmers Ins. Co.*, 112 N.M. 73, 74, 811 P.2d 571, 572 (1991) ("Absent ambiguity, provisions of [a] contract need only be applied, rather than construed or interpreted."). In construing insurance

policy provisions, "[a]mbiguities arise when separate sections of a policy appear to conflict with one another, when the language of a provision is susceptible to more than one meaning, when the structure of the contract is illogical, or when a particular matter of coverage is not explicitly addressed by the policy." *Rummel,* 1997–NMSC–041, ¶ 19, 123 N.M. 752, 945 P.2d 970 (citations omitted).

{12} The express language of the State Farm policy is not ambiguous. For purposes of uninsured motorist coverage, the policy clearly includes relatives as insureds.[1] At the time of the accident, Nichelle did not meet the definition of a relative as defined by the policy. It defines a relative as "a person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried and unemancipated child away at school." Substantial evidence exists to support the trial court's finding that Nichelle was not a Class I insured because she did not live with her parents and was married. Although there was testimony that Nichelle maintained dual residences at the Ponder family home and Diamond A Ranch and had announced her intention to move back to the Ponder family home and obtain a divorce from her husband, the trial court found that Nichelle did not live at the Ponder home. As such, we agree with the trial court's conclusion that "[a]t the time of the accident, Nichelle Ponder was not a Class I insured under any of the express definitions contained in the policy."

{13} Despite our finding that Nichelle was not a Class I insured under the express provisions of the State Farm policy, our inquiry does not end here. New Mexico has, since our decisions in *C.R. Anthony Co. v. Loretto Mall Partners,* 112 N.M. 504, 508–09, 817 P.2d 238, 242–43 (1991), and *Mark V, Inc. v. Mellekas,* 114 N.M. 778, 781–82, 845 P.2d 1232, 1235–36 (1993), no longer restricted contract interpretation to language found within the four corners of an insurance poli-

cy. The *Mark V, Inc.* Court recognized that "[w]ithout a full examination of the circumstances surrounding the making of the agreement, ambiguity or lack thereof often cannot properly be discerned." 114 N.M. at 781, 845 P.2d at 1235. In abandoning reliance only on the four-corners approach, courts are now allowed to consider extrinsic evidence in determining whether an ambiguity exists in the first instance, or to resolve any ambiguities that a court may discover. In *Jaramillo,* we stated that a court may consider extrinsic evidence to make its preliminary finding on questions of ambiguity. 117 N.M. at 340–41, 871 P.2d at 1346–47. *Rummel* not only recognized that a court could use extrinsic evidence to determine if an ambiguity existed, but also added that, "[i]f ambiguities cannot be resolved by examining the language of the insurance policy, courts may look to extrinsic evidence such as the premiums paid for insurance coverage, the circumstances surrounding the agreement, the conduct of the parties, and oral expressions of the parties' intentions." 1997–NMSC–041, ¶ 21, 123 N.M. 752, 945 P.2d 970.

{14} We note, however, that in examining extrinsic evidence we will not give effect to a party's undisclosed intentions. "As a matter of law, one party's subjective impressions, innermost thoughts, or private intentions, do not create an ambiguity." *Hoggard v. Carlsbad,* 1996–NMCA–003, ¶ 15, 121 N.M. 166, 909 P.2d 726. In *Hansen v. Ford Motor Co.,* 120 N.M. 203, 206, 900 P.2d 952, 955 (1995), we determined that a party's statements of unilateral, subjective intent, without more, are insufficient to establish ambiguity in light of clear contract language.

{15} Based on our review of the circumstances surrounding the agreement, the conduct of the parties, and their oral expressions of their intentions, we conclude that the Ponders' State Farm policy was ambiguous. Linda Ponder testified that her conversations with the Atkinson Agency be-

---

1. Section III of the State Farm policy, which outlines uninsured and unknown motorist coverage, defines an insured as:
   1. the first person named in the declarations;
   2. his or her spouse;
   3. their relatives; and

4. any other person while occupying:
   a. your car ... [s]uch vehicle has to be used within the scope of the consent of you or your spouse....
(Emphasis omitted).

tween 1986 and 1987, led her to believe that Nichelle's coverage was the same as it had been when she had been originally rated in 1985. She believed that the extent of Nichelle's coverage had not changed and that her offers to make changes to the policy were not necessary.

{16} As early as August 1986, Linda Ponder contacted the Atkinson Agency. During this conversation, Linda Ponder informed the agency that Nichelle Ponder had married, was expecting a baby, and was "moving in and out" of the Ponder family home. Linda Ponder testified that she wanted to know whether the change in her daughter's marital status limited her coverage so that, if necessary, she could take the necessary steps to obtain coverage that would also cover Nichelle on the other Ponder vehicles. Linda Ponder maintained that Atkinson repeatedly used the terms "fully covered" to describe Nichelle's coverage. The agency file partially corroborated Linda Ponder's testimony about Nichelle Ponder's marriage but failed to mention any change in living arrangements.

{17} During another conversation with the Atkinson Agency in May 1987, prior to the expiration of their automobile insurance policies, Linda Ponder testified that she asked about the status of her daughter's coverage because Nichelle was married and planning to move to the Diamond A Ranch, and she wanted to confirm that Nichelle still had insurance coverage. Furthermore, she indicated to Atkinson that she wanted "full coverage" for her daughter to continue and expressed concern that her change of residence would alter the scope of her coverage. She claims that Atkinson reassured her stating, "don't worry, everything's taken care of." We note that Linda Ponder, on cross examination, testified that she did not inquire what "full coverage" meant. Linda Ponder testified that her conversations with the Atkinson Agency between 1986 and 1987 led her to believe that Nichelle's coverage was the same as it had been in 1985 when she had been originally rated and that the extent of coverage did not change and that her offers to make any changes to the policy were not necessary.

{18} The Atkinson Agency maintains that they were never questioned by the Ponders as to what effect Nichelle's change in residence would have on her insured status, and challenges Linda Ponder's claim that the primary purpose of the several conversations with Atkinson was to ascertain the extent of Nichelle's coverage and to instruct Atkinson to ensure that her daughter's insurance coverage was maintained. As such, Herb Atkinson testified that he did not relay to the Ponders that a change in residence would affect the extent of their daughter's coverage.

{19} Examination of the extrinsic evidence in this case supports a finding that the policy was ambiguous. *See C.R. Anthony Co.*, 112 N.M. at 508–09, 817 P.2d at 242–43; *Mark V, Inc.*, 114 N.M. at 781–82, 845 P.2d at 1235–36. The evidence presented does more than express Ponder's "unilateral, subjective intent." *Hansen*, 120 N.M. at 206, 900 P.2d at 955. The affidavits and trial testimony provide evidence of the oral expressions and intentions of the parties in the formation of the contract.

{20} Herb Atkinson's testimony that a minor, like Nichelle Ponder, who moves out of the house and takes a vehicle would still enjoy full coverage under both the liability and uninsured motorist provisions of her parents' policies, does not alter the fact that there were significant changes in the scope of coverage with regard to Nichelle's ability to stack coverage. Despite Herb Atkinson's testimony that there was no way that he could write a policy that would allow an individual, like Nichelle, who does not own the vehicle, to stack coverage for the seven additional vehicles after she had moved out and no longer qualified as a named insured under the policy, the same conclusion would not be obvious to the typical insured. Had the Atkinson Agency informed the Ponders that because Nichelle was no longer living in the family home, she was no longer entitled to stacking and then followed up by suggesting that they compensate by increasing their uninsured motorist coverage for the F100 pickup truck, we would not be presented with the issues before us today.

**B.**

{21} In determining whether contractual ambiguities exist, we also examine the effect of State Farm's rating of Nichelle as the principal driver and charging an additional premium for her use of the Ford F100 pickup truck.

{22} New Mexico recognizes two classes of insureds, each with attendant rights for purposes of stacking uninsured motorist coverage benefits. "Class I insureds are the named insured, the spouse, and those relatives that reside in the household while Class II insureds are insured by virtue of their passenger status in an insured vehicle." *Tarango v. Farmers Ins. Co. of Arizona,* 115 N.M. 225, 226, 849 P.2d 368, 369 (1993). "First class insureds are covered by policies no matter where they are or in what circumstances they may be; coverage is not limited to a particular vehicle. On the other hand, second class insureds are covered only because they occupy an insured vehicle." *Gamboa,* 104 N.M. at 758, 726 P.2d at 1388 (citation omitted). Class I insureds may stack all uninsured motorist policies purchased by the named insured because those policies were purchased to benefit the named insured and his or her family, but Class II insureds may only recover under the policy on the car in which they rode because the purchaser only intended occupants to benefit from that particular policy. *Padilla v. Dairyland Ins. Co.,* 109 N.M. 555, 559, 787 P.2d 835, 839 (1990); *Morro v. Farmers Ins. Group,* 106 N.M. 669, 671, 748 P.2d 512, 513 (1988); *Schmick v. State Farm Mut. Auto. Ins. Co.,* 103 N.M. 216, 220, 704 P.2d 1092, 1096 (1985).

{23} In this case, the trial court concluded as a matter of law that, "when an additional premium was paid for Nichelle to be 'rated' on the one policy, she became a Class I insured on that vehicle." State Farm contends, however, that Nichelle was only a Class II permissive user not entitled to stacking benefits. State Farm argues that when it rated Nichelle after the May 1987 renewals, that it was not in consideration for her recent change in residence and marital status, but instead continued to be assessed in consideration for the additional risk created by Nichelle's 1985 accident and her status as an "unmarried female driver under age twenty-one."

{24} Our examination of the facts indicate that Nichelle was more than a mere permissive user of the F100 pickup truck. Here, State Farm's claim that the trial court may have believed that Nichelle was rated in consideration of her change in residence is not dispositive to the resolution of this issue. State Farm received valuable consideration both before and after the May 1987 renewal from the continued assessment of additional premiums in exchange for rating Nichelle as the principal driver of the Ford F100 pickup truck, despite having been informed of the changes in her living arrangements and marital status. Based on this, we believe that the rating of Nichelle on the F100 pickup truck after her change in living arrangements contributed to the ambiguity in the policy.

{25} The trial court found that contractual ambiguities existed in the State Farm policy. In its conclusions of law the trial court stated, "Any ambiguity in the insurance policy will be construed against the insurer so as to resolve any coverage issue in favor of the insured." We agree with this analysis, and based on our consideration of the express provisions of the policy, as well as the extrinsic evidence of the circumstances surrounding the formation of the contract, we conclude that the State Farm policy is ambiguous.

**C.**

{26} When interpreting insurance policies, as a matter of public policy, ambiguities are generally construed in favor of the insured and against the insurer. Thus, where the policy is found to be unclear and ambiguous, "[t]he court's construction of an insurance policy will be guided by the reasonable expectations of the insured." *Rummel,* 1997–NMSC–041, ¶ 22, 123 N.M. 752, 945 P.2d 970. The Court, in *Sanchez v. Herrera,* recognized the relative difference in bargaining power between insurance companies and the typical insured, stating,

The typical insured does not bargain for individual terms within policy clauses; the insured makes only broad choices regarding general concepts of coverage, risk, and cost. Not only does the insurance company draft the documents, but it does so with far more knowledge than the typical insured of the consequences of particular words.

109 N.M. 155, 159, 783 P.2d 465, 469 (1989).

{27} In *Jaramillo*, however, we noted that while the general rule is to construe insurance policies in favor of the insured, "[the] general rule is not applicable to situations in which a third party who is not expressly named as the insured or who is not an acknowledged family member is seeking coverage under a policy that has not been purchased by the third party." 117 N.M. at 341, 871 P.2d at 1347. Although State Farm acknowledges that the trial court may have impliedly found the insurance policy was ambiguous, it contends that Ponder is a third party and therefore not entitled to the general rule favoring construction in favor of insureds. *Jaramillo* concluded that "if the ambiguity gives rise to the question whether a third party is or is not the intended beneficiary of specific stacking provisions, the third party is not entitled to the rule of construction that ambiguities must be decided against the insurer." 117 N.M. at 342, 871 P.2d at 1348.

{28} We do not dispute *Jaramillo*'s rule regarding third-party beneficiaries and burdens of proof. However, we conclude that Nichelle does not fall in the same category as the type of third-party beneficiaries identified in *Jaramillo*. This case is factually distinguishable from *Jaramillo*. In *Jaramillo*, an employee was seeking to stack benefits under a company automobile insurance policy. In contrast, the evidence in this case, which includes the express policy provisions of the State Farm policy, extrinsic evidence relating to the renewal notices, Linda Ponder's discussions, and contact with the Atkinson Agency, supports an interpretation that Nichelle was not a third-party beneficiary. Nichelle's name appeared in the policy, though as a driver rated for the use of the Ford F100 pickup truck, and according to the testimony of Linda Ponder, she expected her daughter's full coverage to continue with the policy renewals in May 1987. We recognize the rationale behind not permitting third persons, not a party to a contract, from enjoying the benefit of a construction of the policy in their favor. However, in this case, we cannot accept State Farm's suggestion that we apply the rule to Nichelle and characterize her as a third person seeking to benefit from stacking provisions. Given the trial court's findings of fact, we believe that Nichelle is not a third-party beneficiary as described in *Jaramillo*. As such, we conclude that the established principles by which New Mexico law "recognizes the special nature of insurance contracts and has developed principles of construction that favor both the insured and the avowed purpose of insurance, the provision of coverage" remain the proper means of analyzing and construing the insurance contract in this case. *Sanchez,* 109 N.M. at 159, 783 P.2d at 469.

### D.

{29} Accordingly, we find that Linda Ponder had a reasonable expectation that her daughter would maintain the same type and extent of coverage that Nichelle enjoyed while living at the Ponder family home. *See Casias v. Continental Casualty Co.,* 1998–NMCA–083, 125 N.M. 297, 960 P.2d 839. Although the Atkinson Agency may have told Linda Ponder that her daughter was "fully covered" and "not to worry" and although Nichelle may have maintained liability and uninsured motorist coverage under the terms of the policy, we nonetheless believe that based on the oral expressions of the parties and the intentions communicated therein, that Linda Ponder had a reasonable expectation that Nichelle could stack coverage. We find it relevant to our disposition of this case that Nichelle had enjoyed Class I insured status under the express provisions of the policy, prior to her change in residence. Combined with Linda Ponder's attempts to maintain that coverage and the confusion that ensued, we find that based on the ambiguities we have identified in this case, Linda Ponder had a reasonable expectation that her daughter enjoyed the same Class I status she

did prior to her change in marital status and residence.[2]

{30} In this case, the trial court specifically found that Nichelle was not a Class I insured under the express terms and provisions of the policies issued to her parents. However, the trial court nonetheless concluded that Nichelle was a Class I insured based on the ambiguity in the policy. Applying *Jaramillo*'s rule that extrinsic evidence may be considered to determine if the terms and conditions of the policy were ambiguous, we conclude from the evidence adduced at trial that substantial evidence exists to support the trial court's decision that Nichelle was a Class I insured.

{31} In affirming the trial court, we are not adopting, at this time, a per se rule that in every circumstance a person, not otherwise a Class I insured under the policy, who is a rated driver, and for whom additional premiums are assessed, is by default a Class I insured. Based on the specific facts presented in this case, we hold that Nichelle had a reasonable expectation of coverage as a Class I insured. Rather than finding as a matter of law that rating a driver and assessing an additional premium automatically confers Class I status, our conclusion is based on our consideration of the extrinsic evidence and the policy language in this case. The fact that State Farm rated Nichelle was only one of many factors that led to the contractual ambiguity which we construed in favor of Nichelle. Despite unambiguous policy language which might have otherwise excluded Nichelle as a Class I insured, the context in which the policy was created and accepted demonstrate a clear intent and a reasonable expectation that Nichelle Ponder maintain her status as a Class I insured. Given the contractual ambiguities in this case, we construe the policy in favor of Nichelle.

## IV.

{32} Having concluded that Nichelle is a Class I insured, we now address the question of whether she is permitted to stack the uninsured motorist benefits on all of her parents' vehicles or only the three vehicles which had renewal notices that contained the language, "Younger drivers included if insured on another vehicle by us." As we have noted, New Mexico has refused to enforce insurance policy provisions which purport to limit uninsured motorist coverage. As we have already determined that Ponder was, in this case, a Class I insured, we now consider the effect of the language in the renewal notices for the other remaining vehicles which contain clauses purportedly limiting coverage to certain drivers.[3]

{33} New Mexico has developed a strong policy favoring stacking for Class I insureds and "[t]his Court has consistently refused to enforce exclusions that attempt to limit uninsured motorist coverage to particular circumstances." *Loya v. State Farm Mut. Ins. Co.*, 119 N.M. 1, 6, 888 P.2d 447, 452 (1994). "Insurance policy clauses that prohibit stacking are particularly repugnant to public policy when the injured insured has paid separate premiums for underinsured/uninsured

---

**2.** We note that our disposition of this case might have been different if Nichelle had not been previously insured as a Class I insured for there may have been less credence to the argument that the Ponders had a reasonable expectation that their daughter was covered as a Class I insured.

**3.** Relevant language in the renewal policies is as follows:
1. 1986 Dodge motor home: "Your premium is based on the following: Principal driver is age 25 or older."
2. 1983 Harley Davidson motorcycle: "There are no principal male or unmarried female operators under age 25 unless rated on another motorcycle insured with us."
3. 1982 Honda motorcycle: "There are no principle male or unmarried female operators

under age 25 unless rated on another motorcycle insured with us."
4. 1981 Ford F100: "Principle driver is an unmarried female under age 21."
5. 1985 Ford F250: "There are no unmarried male drivers under age 25. Younger drivers included if rated on another car insured with us."
6. 1986 Nissan 300ZX: "There are no male or unmarried female drivers under age 25. Younger drivers are included if rated on another car insured with us."
7. 1982 Ford F250: "There are no unmarried male drivers under age 25. Younger drivers included if rated on another car insured with us."
8. 1983 Peugeot: No language in record.

motorist coverage on each vehicle." *Jimenez v. Foundation Reserve Insurance Co., Inc.,* 107 N.M. 322, 324, 757 P.2d 792, 794 (1988). The underlying rationale is that if the damages an insured has suffered have exceeded the policy limits, the insured has a reasonable expectation of coverage under the policies he or she has purchased for their benefit. *Id.*

{34} State Farm correctly acknowledges that it stands on shaky ground when advancing arguments that urge this Court to limit the coverage of a Class I insured. In *Jimenez,* we stated that "an insurer's attempt by a limiting clause to preclude stacking of additional coverage separately paid for by the insured violates the clear policy of the uninsured motorist statute, which intends that an injured party be compensated to the extent of coverage obtained by or for the injured party." 107 N.M. at 325, 757 P.2d at 795; *see also Schmick,* 103 N.M. at 221, 704 P.2d at 1097 ("[The] only limitations to be placed on uninsured/underinsured motorist coverage are that the insured legally be entitled to recover damages and that the negligent driver be either uninsured or underinsured" and holding an exclusionary clause limiting plaintiff's recovery "void as against New Mexico's policy of compensating persons injured through no fault of their own."). In *Loya,* we held that an insurance policy containing an express exclusion limiting a spouse's coverage based on a definition of "spouse" limited to "your husband or wife while living with you" was void. 119 N.M. at 5–6, 888 P.2d at 451–52.

{35} While the notices for only three of the vehicles contains language that includes "younger drivers ... if rated on another car insured with us," the language in the notices for the other vehicles only contained language identifying the *principal* driver. There were no specific exclusions restricting Nichelle's use of the remaining vehicles. Accordingly, in this case, we conclude that the purported exclusions in the State Farm policy limiting Nichelle's ability to stack coverage to drivers not under 25 shall not be given effect so as to prohibit Nichelle Ponder from stacking coverage for all the vehicles in her parents' policies.

Therefore, we hold that the trial court properly concluded that Nichelle is entitled to stack the benefits for all eight vehicles.

## V.

{36} State Farm claims that the trial court's award of $156,729.43 in prejudgement interest under NMSA 1978, § 56–8–3(A) (1983) (stating that interest shall not exceed fifteen percent in cases where money is due by contract) constitutes a penalty and was therefore an abuse of discretion. Specifically, State Farm contends that because the trial court created a new class of Class I insureds, thereby extending the current law of stacking in New Mexico, no money was ever due on the contract—thus any interest due should have only accrued from the date of the judgment. *See* § 56–8–3(A). Finally, State Farm claims that the prejudgment interest award constituted a penalty because it amounted to almost seventy percent of the damage award.

{37} "The obligation to pay prejudgment interest under section 56–8–3 arises by operation of law and constitutes an obligation to pay damages to compensate a claimant for the lost opportunity to use money owed the claimant and retained by the obligor between the time the claimant's claim accrues and the time of judgment (the loss of use and earning power of the claimant's funds)." *Sunwest Bank v. Colucci,* 117 N.M. 373, 377, 872 P.2d 346, 350 (1994) (citation omitted). Even for those cases where prejudgment interest is required as a matter of right, "the trial court must consider the equities in each case before awarding prejudgment interest pursuant to Section 56–8–3." *Sunwest Bank,* 117 N.M. at 378, 872 P.2d at 351; *Ranch World of New Mexico, Inc. v. Berry Land & Cattle Co.,* 110 N.M. 402, 404, 796 P.2d 1098, 1100 (1990) (quoting *Shaeffer v. Kelton,* 95 N.M. 182, 188, 619 P.2d 1226, 1232 (1980), for the proposition that prejudgement interest awards should not be made "arbitrarily without regard for the equities of each particular situation").

{38} State Farm argues that because the trial court found that it had paid Nichelle all monies for which she was entitled under the express definitions of the policy, no breach of

contract existed," and that its "duty to pay did not become fixed until the court changed the law and extended the scope of uninsured motorist coverage." Because State Farm owed no additional monies and because the "additional coverage was created by the trial court" the prejudgment interest awarded by the trial court constitutes a penalty and an abuse of discretion. State Farm directs us to numerous cases standing for the proposition that prejudgment interest is due as a matter of right " 'only when a party has breached a duty to pay a definite sum of money or the amount due under the contract can be ascertained with reasonable certainty by a mathematical standard fixed in the contract, or by established market prices.' " *Sunwest Bank*, 117 N.M. at 378, 872 P.2d at 351 (quoted authority omitted).

{39} In this case, we hold that the trial court properly awarded Nichelle prejudgment interest under section 56–8–3(A) in the amount of $156,729.43. As indicated above, we do not today announce a per se rule that an insurance company creates a Class I insured by rating a driver and assessing additional premiums. Our holding is very fact-specific and conforms to established legal precedent in New Mexico regarding stacking insurance coverage. Nichelle had a reasonable expectation of coverage under the State Farm policy. As such, we hold that

the trial court's application of section 56–8–3(A) and award of prejudgment interest for money due by contract was proper.

{40} Furthermore, the trial court concluded that its award of seven and one-half percent interest was "fair and reasonable, considering the earning power of money [the $225,000 damages award]; that it is a case of first impression; and that the [c]ontract between the parties is silent regarding the issues which were litigated." Under section 56–8–3(A), the trial court was permitted to assess a maximum prejudgment interest award of fifteen percent. Instead, the trial court's award constituted only seven and one-half percent. The trial court properly considered the equities of the case at hand and we find no abuse of discretion in its judgment.

{41}  **IT IS SO ORDERED.**

MINZNER, C.J., FRANCHINI, SERNA, and MAES, JJ., concur.