**Certiorari Denied, December 2, 2010, No. 32,658**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-005**

**Filing Date: August 16, 2010**

**Docket No. 28,536**

**JESUS MOLINA and
MARIA ANITA MOLINA,**

> **Plaintiffs-Appellants,**

**v.**

**ALLSTATE INDEMNITY COMPANY,
an Illinois corporation,**

> **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Linda M. Vanzi, District Judge**

Douglas A. Azar
Albuquerque, NM

for Appellants

Simone, Roberts & Weiss, P.A.
David W. Frizzell
Albuquerque, NM

for Appellee

**OPINION**

**GARCIA, Judge.**

**{1}**     The issue in this case is whether there was a lapse in policy coverage.  Concluding that there was a lapse, we affirm the district court.

**BACKGROUND**

1

**{2}**     Jesus and Maria Anita Molina (the Molinas) appeal from the district court's order and judgment dismissing their complaint against Allstate Indemnity Company (Allstate). The Molinas had been Allstate customers for twelve years at the time the dispute arose. In 2002 the Molinas insured two homes and four vehicles with Allstate, including a 1999 Ford F-250 pickup, which is the vehicle at issue in this case. Around August 13, 2002, the Molinas received a renewal statement for their automobile insurance policy. One option for renewing their insurance was to pay the premium in installments, provided that the initial minium payment of $853.77 was paid before 12:02 a.m. on September 2, 2002. The statement stated that the Molinas' coverage would not continue if Allstate did not receive the minimum payment amount by the due date.

**{3}**     On August 29, 2002, the Molinas made a payment of $500. Allstate sent the Molinas a special notice dated September 3, 2002, informing the Molinas that their coverage would terminate if full payment was not received before 12:01 a.m. on September 2, 2002. There was a grace period that allowed for payment until September 9, 2002. On September 10, 2002, the Molinas' daughter delivered a check for the remainder of the premium, $353.77. When their daughter delivered the payment, the Allstate secretary gave their daughter a conditional receipt that stated that acceptance of the payment did not reinstate the policy. Allstate deposited the second payment on September 11, 2002.

**{4}**     On September 13, 2002, Allstate generated a refund check for the total amount of $853.77. Allstate records indicate the refund check was mailed to the Molinas on September 16, 2002. Also on September 16, the Molinas called Allstate to report that their vehicle was stolen sometime during the previous night. The Molinas later filed a claim for their stolen vehicle. Allstate denied the theft claim.

**{5}**     In response to the coverage denial, the Molinas sued Allstate. After a bench trial, the district court dismissed the case. The court determined that the Molinas' policy lapsed because of their failure to make the minimum required payment within the time limits required for renewal of the policy. This appeal followed.

**DISCUSSION**

**{6}**     We begin by reminding the parties to follow the Rules of Appellate Procedure when filing briefs. *See* Rule 12-305(C), (D) NMRA (specifying the font size and spacing requirements).

**{7}**     The ultimate question in this case is whether the Molinas' insurance policy lapsed or was cancelled. The Molinas argue that the district court's determination that there was a lapse in the policy is a mixed question of law and fact. Without deciding the issue, we apply the Molinas' requested standard of review. As such, we apply a substantial evidence standard to the facts and review de novo the district court's application of the law to the facts. *See Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 7, 129 N.M. 698,

12 P.3d 960.

**{8}** Generally, "the failure of an insured to pay a renewal premium by the due date results in a lapse of coverage as of the last day of the policy period." *Guar. Nat'l Ins. Co. v. C de Baca*, 120 N.M. 806, 811, 907 P.2d 210, 215 (Ct. App. 1995). In contrast, a policy is cancelled by "a unilateral act of the insurer terminating coverage during the policy term." *Id.* (internal quotation marks and citation omitted). This Court in *Guaranty National* addressed the question of whether the plaintiff's policy had lapsed or had been cancelled. *Id.* In that case, the plaintiff failed to pay the renewal premium payment by the due date. *Id.* at 808, 907 P.2d at 212. The plaintiff was involved in a serious accident that occurred after the due date for the renewal premium and prior to the insurer's receipt of her renewal payment. *Id.* The insurer filed a declaratory judgment action to determine whether the policy had lapsed. *Id.* at 807-08, 907 P.2d at 211-12. The district court found there was a lapse in coverage, and this Court agreed. *Id.* at 811-12, 907 P.2d at 215-16.

**{9}** Under the holding in *Guaranty National*, an insured must pay the renewal premium amount prior to the due date in order to avoid a lapse in insurance coverage. *Guaranty National* presented a slightly different factual situation than the one before us now. In this case, the insured made an on-time, short payment toward the premium and then fulfilled the premium amount with a subsequent late payment. However, we see no reason to depart from our holding in *Guaranty National*. Insurance policies are contracts and are governed by basic contract principles. *See Ponder*, 2000-NMSC-033, ¶ 11 ("We resolve questions regarding insurance policies by interpreting their terms and provisions in accordance with the same principles which govern the interpretations of all contracts." (internal quotations marks and citation omitted)); *Atlas Assurance Co. v. Gen. Builders, Inc.*, 93 N.M. 398, 400, 600 P.2d 850, 852 (Ct. App. 1979). One basic principle is that "when the policy language is clear and unambiguous, we must give effect to the contract and enforce it as written." *Ponder*, 2000-NMSC-033, ¶ 11.

**{10}** The renewal letter in this case was clear and unambiguous, and the Molinas do not argue that it was ambiguous. The facts are undisputed. Mrs. Molina knew she had to pay $853.77 by September 2, 2002. While the Molinas made a $500 on-time, short payment, they did not pay the full premium amount prior to September 2, 2002. When the Molinas failed to pay the premium renewal amount of $853.77 prior to the due date, they did not comply with the terms of their contact with Allstate. As a result, their insurance coverage lapsed. The Molinas have not directed us to a contract principle that would allow for us to interpret the contract such that partial payment would suffice to continue their coverage. We assume that no authority for their proposition exists. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984).

**{11}** In an effort to convince this Court that their policy did not lapse, the Molinas attempt to analogize their case to several out-of-state cases. Based on these cases, the Molinas contend that by accepting the Molinas' short payment, "retaining it and using it, Allstate waived any conditions of payments it might have had regarding premium payment terms." These cases are distinguishable from the case before us and do not persuade us that the Molinas' policy did not lapse.

**{12}** The Molinas cite *Mitchell v. Farmers Insurance Exchange*, 396 S.W.2d 647, 652 (Mo. 1965), for the proposition that "conditions for payments of premium may be waived by the insure[r.]" In *Mitchell*, the insured's policy continued without a lapse when the insurer accepted a late premium renewal payment, processed the payment in a normal fashion, and did not raise any objection to the late payment. *Id.* at 649-50. After learning of the insured's accident, the insurer decided the policy was not in effect at the time of the accident. *Id.* at 649. The court held that the insurer waived the contract terms by accepting and processing the late payment without objection. *Id.* at 650-51. Unlike *Mitchell*, there is no evidence that Allstate waived the contract terms in the present case. The Molinas' daughter was specifically provided a conditional receipt and notified that acceptance did not reinstate the policy. Allstate did not process the payment as normal and did not waive its contract rights by conditionally accepting the late payment. Within a week of receiving the conditional late payment and prior to the incident, Allstate affirmed its rejection of the late payment and refunded the Molinas' their full payments. There was no waiver. *See J.R. Hale Contracting Co. v. United N.M. Bank*, 110 N.M. 712, 716, 799 P.2d 581, 585 (1990) (defining waiver as "the intentional relinquishment or abandonment of a known right").

**{13}** The Molinas also cite to *Evaluation Systems, Inc. v. Aetna Life Insurance Co.*, 555 F. Supp. 116 (N.D. Ill. 1982) (mem. and order). *Evaluations Systems* involved a complicated fact pattern where a life insurance company accepted a premium payment for less than the total premium amount, immediately cashed the check, and then retained the proceeds for three months before refunding the payment. *Id.* at 117-19. In addition, there were several letters mailed and returned regarding the premium payment as well as conversations between the potential insured and the insurer. *Id.* Based on the language in the policy allowing for quarterly payments and other Illinois precedent, the court held that the insurer was contractually bound to provide coverage. *Id.* at 120-21. The facts in *Evaluation Systems* are markedly different from the facts of the case before us as the Molinas failed to make the minimum payment amount acceptable to the insurer, Allstate refunded the payments within a week of receiving the late payment, and the Molinas were aware of the need to pay their full premium payment amount by the due date.

**{14}** The Molinas make several other arguments that their policy did not lapse. They contend that "Allstate's acceptance of the late payment without objecting to its timeliness, modified the contract allowing it to remain in force until after the date of the theft." There are also several flaws with this argument. Allstate did object to the timeliness of the payment. Allstate sent a letter reminding the Molinas that their first short payment was insufficient. When the Molinas' daughter made the second premium payment, Allstate gave her a conditional receipt indicating that the acceptance of the payment did not reinstate the policy. The Molinas cite to *Cowan v. Chalamidas*, 98 N.M. 14, 15, 644 P.2d 528, 529 (1982), apparently for the proposition that when a late payment is accepted without an objection by a contract payee, the payee impliedly indicates that late payments are acceptable. The general proposition set forth in *Cowan* is not applicable to this case because Allstate did object at the time the late payment was made and then timely processed the full refund of all amounts received.

**{15}** Three other cases cited by the Molinas in their brief in chief stand for the proposition

that absent a showing of fraud, inadequate consideration is not enough to forfeit a contract. *Cf. Estate of Duncan v. Kinsolving*, 2003-NMSC-013, ¶ 21, 133 N.M. 821, 70 P.3d 1260; *Featherstone v. Walker*, 43 N.M. 181, 191, 88 P.2d 271, 276 (1939); *Ramirez v. Johnny's Roofing, Inc.*, 1999-NMCA-038, ¶ 11, 127 N.M. 83, 977 P.2d 348. Whether the renewal premium payment amount was adequate consideration is not the issue before us, as it is undisputed that $853.77 was the proper consideration that the Molinas were required to timely pay in order to renew their policy coverage.

**{16}** Next, the Molinas ask this Court to construe the insurance policy in favor of the insured and determine that the Molinas' noncompliance with the strict payment terms did not forfeit the policy. However, the payment terms under the policy were not ambiguous. Where no ambiguity exists, the court will not construe the terms of an insurance policy in favor of the insured. *See King v. Travelers Ins. Co.*, 84 N.M. 550, 555, 505 P.2d 1226, 1231 (1973); *Ivy Nelson Grain Co. v. Commercial Union Ins. Co.*, 80 N.M. 224, 226, 453 P.2d 587, 589 (1969)*; Gray v. Int'l Serv. Ins. Co.*, 73 N.M. 158, 161, 386 P.2d 249, 252 (1963). In addition, the Molinas provide no authority or argument in support of their position that *Guaranty National* must yield to a construction in favor of the insured. We therefore decline to address the issue further. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (stating that this Court will not consider propositions that are unsupported).

**{17}** Finally, the Molinas seem to allege that the contract was an adhesion contract. They do not explain how or why a unilateral contract would change their payment terms or otherwise affect the timeliness of the required premium payment. We therefore have no argument to address. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

**{18}** The Molinas' insurance policy lapsed when they failed to pay the renewal premium of $853.77 by the due date. *See Guaranty National*, 120 N.M. at 811, 907 P.2d at 215. Allstate's obligations to the Molinas ceased as of the date of the lapse. Therefore, Allstate did not have an insurance obligation to the Molinas when their vehicle was stolen after the date the policy lapsed.

**CONCLUSION**

**{19}** We affirm the district court for the foregoing reasons.

**{20}** **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

5

**JONATHAN B. SUTIN, Judge**

_____

**RODERICK T. KENNEDY, Judge**

**Topic Index for _Molina v. Allstate Indemnity Co._, Docket No. 28,536**

**AE**          **APPEAL AND ERROR**
AE-SR      Standard of Review

**CN**          **CONTRACTS**
CN-AM     Ambiguous Contracts
CN-BR      Breach
CN-IN       Interpretation

**IN**           **INSURANCE**
IN-CA       Cancellation
IN-IC        Insurance Contract
IN-LA       Lapse of Coverage
IN-MV     Motor Vehicle Insurance