2002-NMCA-054

46 P.3d 1264

**COMPUTER CORNER, INC., a New Mexico corporation, Plaintiff–Appellant,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, Defendant– Appellee,**

and

**J.R. Hale Contracting Co., Inc., a New Mexico corporation, and Charles Henry, Defendants–Appellants.**

No. 21,575.

Court of Appeals of New Mexico.

March 28, 2002.

Certiorari Denied, No. 27,474, May 9, 2002.

Paul J. Kennedy, Mary Y.C. Han, Albuquerque, NM, for Appellants.

Stephen M. Simone, Victoria Parker, Simone, Roberts & Weiss, P.A., Albuquerque, NM, for Appellee.

## OPINION

ALARID, Judge.

{1} This case requires us to determine whether a commercial liability insurance policy provided coverage for liability arising from the loss of data stored on a computer hard drive. We hold that it does, and accordingly reverse the district court's judgment in favor of the insurer.

**BACKGROUND**

{2} Computer Corner, Inc. (Computer Corner) is a family-owned business, engaged in the sale and service of personal computers. From January 1, 1995 through January 1, 1996, Computer Corner was insured under a commercial general liability policy (CGL) issued by Fireman's Fund Insurance Company (Fireman's). On May 9, 1995, Charles Henry (Henry) took his personal computer to Computer Corner for service. The computer displayed the error message "major disk error." At the time, Henry was employed by J.R.

Hale Contracting Company (Contracting Company). Various data files that were important to the operation of Contracting Company's business were stored on the computer hard drive. Henry informed the person who received his computer of the presence of these files and warned this employee that these files were not backed up.

{3} In repairing Henry's computer, the technician reformatted the hard drive. No backup of data was performed on the hard drive. Henry picked up his computer on May 10, 1995. As a result of the reformatting, Henry was unable to access the data stored on his hard drive. Henry sought advice from Computer Corner. Henry was erroneously told that the data could not be retrieved when in fact, the files still existed on his hard drive and could have been retrieved if certain procedures had been employed. After receiving the erroneous advice from Computer Corner, Henry used the computer, overwriting the pre-existing files and permanently destroying them.

{4} The loss of the files seriously inconvenienced Henry and Contracting Company. Henry and Contracting Company filed suit against Computer Corner seeking damages for the cost of reconstructing the files. Fireman's agreed to defend the lawsuit under a reservation of rights. However, Fireman's denied any duty to indemnify Computer Corner. Computer Corner settled with Henry and Contracting Company, and assigned to Henry and Contracting Company its rights under the Fireman's policy. Computer Corner then filed a declaratory judgment action, seeking a determination that Fireman's was obligated to indemnify Computer Corner for any damages awarded in the underlying lawsuit. Fireman's filed a counterclaim, seeking a determination that it had no duty to indemnify Computer Corner.

{5} The district court trifurcated trial of the declaratory judgment action. The first phase of the trial addressed the dispositive issue of whether Fireman's had a duty to indemnify Computer Corner. Following a bench trial, the district court entered findings of fact and conclusions of law in which it relieved Fireman's of any duty to indemnify. The district court entered judgment in favor of Fireman's in accordance with its findings of fact and conclusions of law and dismissed Computer Corner's declaratory judgment action. Computer Corner, Henry and Contracting Company appeal. We reverse.

## DISCUSSION

{6} We address a few housekeeping matters. First, the district court found that the computer data in question "was physical, had an actual physical location, occupied space and was capable of being physically damaged and destroyed." The district court concluded "computer data is tangible property." These rulings are not challenged on appeal. Second, based upon our review of Plaintiff's proposed findings of fact and conclusions of law, we agree with Fireman's that Contracting Company did not pursue a claim for indemnification under Section I of the policy. The claim was limited to coverage under Section II—Liability Coverage. We will not address coverage issues under Section I when those issues were not raised in the district court.

### Substantive and Procedural Standards

{7} It is the obligation of the insurer to draft an exclusion that clearly and unambiguously excludes coverage. *Knowles v. United Serv. Auto. Ass'n,* 113 N.M. 703, 705, 832 P.2d 394, 396 (1992). New Mexico courts do not give effect to a party's undisclosed intentions about coverage. *Ponder v. State Farm Mut. Auto. Ins. Co.,* 2000–NMSC–033, ¶ 14, 129 N.M. 698, 12 P.3d 960. In construing standardized policy language, our focus must be upon the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured, who, we assume, will have limited knowledge of insurance law. *Rodriguez v. Windsor Ins. Co.,* 118 N.M. 127, 130–31, 879 P.2d 759, 762–63 (1994). Accordingly, we will not impute to the hypothetical reasonable insured knowledge of statements about the meaning, policy goals, and purposes of an exclusion contained in coverage manuals and other insurance industry materials, in treatises on insurance law, in law reviews, or in cases from other jurisdictions unless it is fair to assume that such information would be common knowledge among lay insureds:

[T]he language at issue should be considered not from the viewpoint of a lawyer, or a person with training in the insurance field, but from the standpoint of a reasonably intelligent layman, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words, and in the light of existing circumstances, prior to and contemporaneous with the making of the policy.

*Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 19, 123 N.M. 752, 945 P.2d 970. If we are alerted to an interpretation supporting coverage to which the language of the policy is reasonably susceptible and which does not violate public policy, we generally will construe the provision against the insurer and in favor of coverage. *But cf., Knowles*, 113 N.M. at 707, 832 P.2d at 398 (declining on policy grounds to adopt interpretation of "expected or intended" acts exclusion that would have limited exclusion to situations where insured acted with specific intention to cause the damage that occurred). It is then up to the insurer to revise the provision in question so as to render an insured's expectation of coverage unreasonable.

{8} Application of the above principles under the facts of a particular case presents a mixed question of law and fact. *Ponder*, 2000–NMSC–033, ¶ 7, 129 N.M. 698, 12 P.3d 960. " '[W]e use the substantial evidence standard for review of the facts and then make a de novo review for the trial court's application of the law to those facts.' " *Id.* (quoting *State v. Reynolds*, 119 N.M. 383, 384, 890 P.2d 1315, 1316 (1995)).

**Intentional Acts Exclusion**

{9} The district court found that "[i]n reformatting the hard drive on Henry's computer, Computer Corner expected and/or intended that data would be lost." Based on this finding, the district court concluded that "[c]overage under the policy is excluded pursuant to Section II, paragraph H(1)(a) of the policy."

{10} Henry testified at trial. According to Henry, he expressly alerted Computer Corner employee Michael Fu to the necessity of backing up certain files. Henry provided Fu with a list of files to back up, which Fu wrote down. Henry testified that after he discovered the loss of data, he spoke with Fu, who stated that "By the time I got back there, they had already reformatted it, so it's lost and it's gone. I'm sorry." Henry testified that Joe Petranovich, Computer Corner's owner, explained that "I'm very sorry, we should have called you, it shouldn't have happened, we made a mistake." Henry testified that in his experience it had been Computer Corner's policy to back up the data on his computer prior to servicing it. Further, Henry testified that with a backup copy, the data would not have been permanently lost as it could have been "reloaded" using the backed-up copy. Henry testified that on a prior occasion, Petranovich had restored lost data using a backed-up copy.

{11} We conclude that the district court committed an error of law by equating the technician's state of mind with Computer Corner's state of mind. The district court appears to have focused on the volitional nature of the technician's acts without considering whether Fu's failure to pass along the customer's instructions introduced the requisite element of fortuity. We note in this regard that Fireman's policy contains a "Separation of Insureds" provision that provides that "this insurance applies ... [s]eparately to each insured against whom claim is made or **suit** is brought." Section II.K.(5)(b) of the policy. Computer Corner, not the technician, was "the insured" whose state of mind was at issue. Viewed from the standpoint of a hypothetical reasonable insured in Computer Corner's position, Fu's failure to communicate Henry's instructions to the technical staff was as much a cause of the loss of the data as the volitional acts of the particular technician who reformatted the hard drive. There is absolutely no evidence that Fu expected or intended to cause the permanent loss of data; quite to the contrary, Henry's testimony suggests that Fu's failure to timely communicate Henry's instructions to the technician was the result of mis-communication, mistake or carelessness, rather than a conscious decision to cause harm to Henry's property. Conversely, there is no evidence that the technician understood that the hard drive on Henry's com-

puter contained the only copy of certain files and that by reformatting the hard drive he would be contributing to the permanent loss of data. Under these facts, the district court should have concluded, as a matter of law, that the loss of data incident to reformatting the hard drive was neither expected nor intended from Computer Corner's viewpoint. *Cf. Magnetic Data, Inc. v. St. Paul Fire & Marine Ins. Co.*, 430 N.W.2d 483, 486–87 (Minn.Ct.App.1988), *reversed on other grounds*, 442 N.W.2d 153 (1989).

### "Business Risk" Product Exclusions

{12} The district court made findings that under Section II.H.1,(*l*),(m),(n), of the policy "there is no liability coverage for substandard work product or services" and that "[t]he repair services and advice provided Henry by Computer Corner were substandard." Based on these findings, the district court entered the following conclusion of law: "Coverage under the policy is excluded pursuant to Section II, paragraph H(1)(*l*), (m) and (n) of the policy."

{13} Fireman's argues that these exclusions are commonly known as the "work product" or "business risk" exclusions and that the purpose of these exclusions is to prevent the insured from using a CGL policy to "underwrite the insured's business warranties, guarantees, and assurances to its customers." Fireman's refers us to cases and law review articles discussing these exclusions. Fireman's reliance on extrinsic authorities to support its interpretation is inconsistent with New Mexico's doctrine of reasonable expectations. The understanding we impute to a hypothetical reasonable insured must be an understanding that a non-lawyer insured could derive from the language employed in Fireman's policy without resorting to extrinsic sources such as cases from other jurisdictions or law review articles. *Rummel*, 1997–NMCS–041, ¶ 19, 123 N.M. 752, 945 P.2d 970.

{14} Section II.H.1(*l*) of the policy provides that "this insurance" does not apply to "**Property damage** to **your product** arising out of it or any part of it." (Emphasis in original). A principal difficulty with this exclusion is determining what "your product"

means in a given context. 2 Rowland H. Long, *The Law of Liability Insurance* § 11.09[2] at 11–85 (1994) (hereafter Long). Here, the property that was lost-Henry's files-clearly existed prior to and apart from any service or parts provided by Computer Corner in repairing the computer. We find nothing in this exclusion or in the definition of "your product," Section III.28 of the policy, that would have suggested to a reasonable insured in Computer Corner's position that "*your* product" includes pre-existing electronic data belonging to a customer.

{15} Section II.H.1.(m) of the policy provides that "this insurance" does not apply to "**Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard.**" (Emphasis in original). This provision is greatly complicated by the fact that it incorporates three terms—"property damage," "your work" and "products-completed operations hazard"—that are defined elsewhere in the policy. In our view, this exclusion, when read together with the defined terms, is "confusing and open to numerous interpretations." Long, *supra*, § 11.09 at 11–76 (1994).

{16} Ultimately, we have the same problem with this exclusion that we have with the preceding exclusion: the property that was lost-Henry's electronic data-clearly existed prior to and apart from any parts or service provided by Computer Corner in repairing the computer. We do not believe that a reasonable insured in Computer Corner's position would have understood "property damage to *your* work" to include property damage to a customer's pre-existing property.

{17} The final exclusion that we must consider is Section II.H.1.(n) of the policy, which provides that this insurance does not apply to:

**Property damage** to **impaired property** or property that has not been physically injured arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work;** or

(2) A delay or failure by you or anyone acting on your behalf to perform a

contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

{18} Like the preceding exclusions, this exclusion is complicated by the incorporation of multiple terms—"property damage," "impaired property," "your product" and "your work"—defined elsewhere in the policy. To get the feeling for just how difficult to understand this exclusion is, one need only imagine the thought processes of an insured trying to understand the first phrase of the exclusion—"**Property damage** to **impaired property** or property that has not been physically injured...." *Id.* The first definition of "property damage" is "[p]hysical injury to tangible property, including all resulting loss of use of that property." Section III.20.(a) of the policy. Substituting this definition into the first phrase results in the following: "physical injury to tangible property, including all resulting use of that property, to **impaired property** or property that has not been physically injured...." Thus, the first phrase appears to contemplate the following alternatives: (1) physical injury to ... **impaired property,** and (2) physical injury to property that has not been physically injured. This second alternative—physical injury to property that has not been physically injured—is nonsensical. *Id.*

{19} The insured with the stamina to forge ahead would note that the first definition of "impaired property" is

tangible property, other than **your product** or **your work,** that cannot be used or is less useful because: It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous ... if such property can be restored to use by ... [t]he repair, replacement, adjustment or removal of **your product** or **your work.**

Section III.6.(a),(b)(1) of the policy. Substituting this definition together with the definition of "property damage" into the first phrase of Section II.H.1.(n) results in the following:

[p]hysical injury to tangible property, including all resulting loss of use of that property, to tangible property, other than **your product** or **your work,** that cannot be used or is less useful because ... [i]t incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous ... if such property can be restored to use by [t]he repair, replacement, adjustment or removal of **your product** or **your work** or property that has not been physically injured.

The first definition of "your product" is "[a]ny goods, products, or property manufactured, sold, handled, distributed or disposed of by ... You." Section III.28.(a) of the policy. The first definition of "your work" is "[w]ork or operations performed by you or on your behalf." Section III.29.(a) of the policy. Substituting these definitions results in the following phrase:

[p]hysical injury to tangible property, including all resulting use of that property, to tangible property, other than any goods, products, or property manufactured, sold, handled, distributed or disposed of by you or work or operations performed by you or on your behalf, that cannot be used or is less useful because it incorporates any goods, products, or property manufactured, sold, handled, distributed or disposed of by you or work or operations performed by you or on your behalf that is known or thought to be defective, deficient, inadequate or dangerous if such property can be restored to use by the repair, replacement, adjustment or removal of any goods, products, or property manufactured, sold, handled, distributed or disposed of by you or work or operations performed by you or on your behalf or property that has not been physically injured.

{20} We do not mean to suggest that every interpretation problem must be resolvable through a simple substitution of defined terms. However, we think that Fireman's policy, with numerous boldface defined terms, invites this approach and that the resulting semantic bog would be extremely discouraging to a layperson attempting to

read and understand this exclusion. *See* Emy Poulad Grotell, *Understanding the Basics of Commercial General Liability Policies,* 652 PLI/Lit 63, 78 (2001) (noting that "this exclusion is not simple to understand" since it incorporates the definition of "impaired property" which is itself "complicated"). Considering the difficulty this provision presents to this Court in its own effort to decode Fireman's policy, we conclude that this exclusion is unintelligible from the standpoint of a hypothetical reasonable insured operating a computer repair service. We find it difficult to believe that anyone genuinely interested in communicating information to another person—whether in a cookbook, a home appliance manual, or a contract—would employ the type of convoluted, intractable language used in Fireman's policy. Fireman's exclusion appears as much designed to provide Fireman's lawyers with the widest latitude in making arguments against coverage once a coverage dispute has arisen, as to clearly communicate to lay insureds specific limits on the scope of coverage.

{21} The Kentucky Court of Appeals has encapsulated the frustration engendered by the convoluted language employed in standardized insurance policies:

> It would be somewhat ludicrous for us to say this policy is not ambiguous. It is. But no more so than most others. Ambiguity and incomprehensibility seem to be the favorite tools of the insurance trade in drafting policies. Most are a virtually impenetrable thicket of incomprehensible verbosity.... The miracle of it all is that the English language can be subjected to such abuse and still remain an instrument of communication. But, until such time as courts generally weary of the task we have just experienced and strike down the entire practice, we feel that we must run with the pack and attempt to construe that which may well be impossible of construction.

*Universal Underwriters Ins. Co. v. Travelers Ins. Co.,* 451 S.W.2d 616, 622–23 (Ky.Ct.App. 1970). We decline to "attempt to construe that which may well be impossible of construction" because by doing so we encourage the perpetuation of the type of unintelligible language of which Section II.H.1.(n) of Fireman's policy is a perfect example. We therefore hold that under the facts of this case, Section II.H.1.(n) of the policy is too vague and indefinite to be enforceable.

## CONCLUSION

{22} We reverse the judgment in favor of Fireman's and remand for entry of a judgment in favor of Computer Corner on the issue of Fireman's duty to indemnify. Our disposition of the merits requires that we vacate the district court's order on cost bill awarding costs to Fireman's since Fireman's is no longer a prevailing party.

{23} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and IRA S. ROBINSON, Judges.