**TAOS SKI VALLEY, INC., Plaintiff,**

**v.**

**NOVA CASUALTY COMPANY, Defendant.**

**Civ. No. 15–00323 MCA/SCY**

United States District Court, D. New Mexico.

Signed December 30, 2015

Thomas M. Hnasko, Julie Sakura, Hinkle Hensley Shanor & Martin LLP, Santa Fe, NM, for Plaintiff.

Jeanne C. Washburn, Domenici Law Firm PC, Albuquerque, NM, Linda Bondi Morrison, Ryan B. Luther, Tressler LLP, Irvine, CA, for Defendant.

### *ORDER*

M. CHRISTINA ARMIJO, Chief
United States District Judge

This matter is before the Court upon Defendant's Motion to Dismiss [Doc. 14]. The Court has considered the written submissions of the parties, the record in this case, and the applicable law, and is otherwise fully advised.

### Standards Governing a Rule 12(b)(6) Motion to Dismiss

For decades, Rule 12(b)(6) motions were governed by a test taken from *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court retired *Conley* 's test, replacing it with the following test: "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.' " *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). In applying this test, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In short, in ruling on a Rule 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Collins,* 656 F.3d at 1214.

### Discussion

The Complaint alleges that an oil and water separator used in Plaintiff's business released hydrocarbons onto Plaintiff's business premises. These premises were occupied by Plaintiff pursuant to a special use permit from the United State Department of Agriculture. In October 2013, Plaintiff's environmental contractor confirmed the existence in soil within Plaintiff's business premises of "total petroleum hydrocarbons" and "volatile organic compounds" exceeding levels allowed by New Mexico environmental regulations. Subsequently, Plaintiff's environmental contractor determined that due to subsurface conditions, the contamination of Plaintiff's premises measurably threatened the underlying groundwater and the nearby Rio Hondo. Plaintiff, in coordination with the New Mexico Environment Department [1] and the USDA voluntarily and successfully abated the contamination, preventing the pollution of the groundwater and the Rio Hondo. Plaintiff spent over a million dollars in abating the contamination. Prior to initiating the remediation program, Plaintiff notified Defendant, through its agent, Safehold Special Risk, of the contamination and the injury to the environment caused by the contamination.

Plaintiff was insured during the period November 1, 2009 to November 1, 2014 under four successive CGL policies issued by Defendant. Each of Defendant's policies provides that "[insurer] will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' to which this insurance applies...." Defendant's policies define "Property damage" as "[p]hysical injury to tangible property...." The policies further provide that "this insurance does not apply to ... '[p]roperty damage' [*i.e.,* physical injury] to ... [p]roperty you ... occupy, including any costs or expenses incurred by you ... for repair, [or] resto-

---

1. Presumably, Plaintiff proceeded pursuant to the New Mexico Voluntary Remediation Act, NMSA 1978, §§ 74–4G1 *et seq.*

ration ... of such property for any reason, including prevention of .... damage to another's property."

On October 17, 2014, Defendant, through its agent, Safehold Special Risk, notified Plaintiff that based upon the owned/occupied property exclusion Defendant was denying coverage for damages arising from the hydrocarbon contamination. Defendant continues to rely upon this exclusion in denying coverage.

Because jurisdiction over this case is predicated on 28 U.S.C. § 1332, the Court must apply the substantive law of New Mexico. *See Pehle v. Farm Bureau Life Ins. Co., Inc.,* 397 F.3d 897, 900 (10th Cir.2005). Further, because there is no New Mexico Supreme Court precedent construing the owned property exclusion upon which Defendant bases its denial of coverage, the Court must make an *"Erie* guess" as to how the New Mexico Supreme Court would rule. *Id.* at 901–02.

■ The basic principles of New Mexico law governing this insurance coverage dispute are summarized in *Computer Corner, Inc. v. Fireman's Fund Insurance Co.,* 2002–NMCA–054, ¶ 7, 132 N.M. 264, 46 P.3d 1264. Under New Mexico law, an insured's reasonable expectations generally are not informed by "statements about the meaning, policy goals, and purposes of an exclusion contained in coverage manuals and other insurance industry materials, in treatises on insurance law, in law reviews, or in cases from other jurisdictions...." *Computer Corner,* ¶ 7. Ultimately, a court construing an insurance policy in accordance with New Mexico law must attempt to put itself in the shoes of a hypothetical Everyman insured: "[t]he language at issue should be considered not from the viewpoint of a lawyer, or a person with training in the insurance field, but from the standpoint of a reasonably intelligent layman...." *Id.* (quoting *Rummel v. Lexington Ins. Co.,* 1997–NMSC–041, ¶ 19, 123 N.M. 752, 945 P.2d 970) (internal block quotation omitted).

■ The Court is persuaded by the Wisconsin Court of Appeals' straightforward, commonsense reading of an identical owned property exclusion. *Watertown Tire Recyclers, LLC v. Nortman,* No. 2009AP2465, 327 Wis.2d 800, 2010 WL 2403094 (Wis.Ct.App. June 17, 2010). Significantly, in *Nortman,* as in the present case, the property threatened by the migration of on-site pollution was public groundwater and a nearby river.[2] Relying on the plain meaning of the owned property exclusion, the Wisconsin Court of Appeals observed that "this exclusion precludes coverage because the clean-up expenses claimed by [the insured] were for restoring the damaged rented property for a reason specified in the exclusion— the "prevention of ... damage to another's property." *Id.* *2

Plaintiff relies on cases discussing owned property exclusions that lack the crucial words "including any costs or expenses incurred by you ... for repair, [or] restoration ... of such property for any reason, including prevention of ... damage to another's property." It is this additional language that distinguishes Defendant's exclusion from the exclusions in the cases cited by Plaintiff and that renders Plaintiff's reading of Defendant's policy

---

2. Under New Mexico law, surface and underground waters belong to the public, subject to appropriation for beneficial use. NMSA 1978, §§ 72–1–1; 72–12–1. The Court has assumed for purposes of its analysis of the owned property exclusion that groundwater underneath Plaintiff's business premises and water flowing in the Rio Hondo are the property of the public and that pollution of these waters would constitute "damage to another's property."

unreasonable under the facts alleged in the Complaint. *Nortman* at *3 (distinguishing case cited by insured; observing "[this] exclusion has additional language making it clear that the exclusion extends to cleanup for purposes of preventing damage to another's property"). By adding this language, Defendant proceeded exactly as required by New Mexico law: faced with decisions finding coverage under earlier versions of the owned property exclusion, Defendant[3] "revise[d] the provision in question so as to render an insured's expectation of coverage unreasonable." *Computer Corner,* ¶ 7.

The Court rejects Plaintiff's public policy argument that enforcement of the owned property exclusion encourages insured polluters to delay remediation efforts in order to obtain insurance coverage after the pollution damages a third party's property. This argument ignores the exclusion for property damage "expected or intended from the standpoint of the insured." Had Plaintiff ignored the findings of its pollution contractor and stood by as known pollution inevitably migrated into the groundwater and thence into the Rio Hondo, Plaintiff would have invited application of the exclusion for property damage "expected or intended from the standpoint of the insured." *See Dep't of Envtl. Protection v. Signo Trading Int'l, Inc.,* 235 N.J.Super. 321, 562 A.2d 251, 257 (1989) (noting similar argument). Considered as a whole, Defendant's policy does not encourage insureds to delay responding to known pollution on premises that they own or occupy.

### Conclusion

The owned property exclusion construed in accordance with New Mexico law supports Defendant's denial of coverage for

---

**3.** Defendant's policy follows a revised form CGL developed by the Insurance Services Office, Inc. As to the role of the ISO, see *Rose*

cleanup costs under the circumstances alleged in the Complaint. Plaintiff's Complaint fails to assert a claim upon which relief can be granted.

**WHEREFORE, IT HEREBY IS ORDERED** that Defendant's *Motion to Dismiss* [Doc. 14] is **granted** and that the Complaint and this action are dismissed.

**So ordered this 30th day of December, 2015.**

*Acre Farms, Inc. v. Columbia Casualty Co.,* 662 F.3d 765, 768 (7th Cir.2011).